**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| HAYDEN HARRISON and <br> BILLY JAMES, individually and on <br> behalf of all others similarly situated, <br> <br> Plaintiffs, <br> <br> v. <br> <br> GENERAL MOTORS COMPANY, <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 17-3128-CV-S-SRB |

## ORDER

Before this Court is Defendant General Motors Company's Motion to Dismiss Plaintiffs' Amended Complaint. (Doc. #105). For reasons discussed below, the motion is denied.

**I.  Background**

Plaintiffs allege the following in their Amended Class Action Complaint. (Doc. #102). Defendant issued securities instruments called Series A Warrants ("warrants"), which holders could exercise to acquire General Motors Company common stock. Plaintiffs were warrantholders. The warrants were governed by a Warrant Agreement. Under the Warrant Agreement, the warrants were set to expire on Sunday, July 10, 2016. Because July 10 was a non-trading day, the warrants were exercisable only until July 08, 2016. However, the New York Stock Exchange ("NYSE") suspended trading on the warrants on July 01, 2016. Defendant, on June 27, 2016, issued a press release reminding warrantholders that the deadline for exercising warrants was July 08, 2016. Plaintiffs claim that they were unable to exercise their warrants prior to July 10, 2016. Under the Warrant Agreement, the Expiration Date could be modified only with the consent of all warrantholders.

Plaintiffs' Amended Complaint alleges three claims: a breach of contract claim regarding express provisions in the Warrant Agreement governing the warrants' expiration date (Count One); a breach of contract claim regarding the Warrant Agreement's express "Good Faith" provision (Count Two); and an alternative claim for unjust enrichment (Count Three). (Doc. #102, ¶¶ 180–207). Plaintiffs allege Defendant violated the Warrant Agreement by accelerating the expiration date for the warrants held by Plaintiffs without following procedures outlined in the Warrant Agreement and by failing to "take any 'necessary or appropriate' action to protect Warrantholders." (Doc. #102, ¶¶ 180–207). Plaintiffs allege in the alternative that Defendant was unjustly enriched when, through its allegedly wrongful conduct, Defendant "retained the common shares of its stock that could have been redeemed by Warrantholders." (Doc. #102, ¶ 203). Defendant alleges Plaintiffs simply failed to timely exercise their warrants. Defendant requests the dismissal of all Counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendant also requests the dismissal of all claims by putative class members who are not Missouri residents ("Non-Resident Putative Class Members") for lack of personal jurisdiction under Rule 12(b)(2). The parties agree that New York substantive law governs Plaintiffs' claims pursuant to the Warrant Agreement's choice of law provision.[1]

---

[1] Section 7.16 of the Warrant Agreement states "*Applicable Law*. The validity, interpretation and performance of this Warrant Agreement and of the Warrant Certificates shall be governed by the law of the State of New York without giving effect to the principles of conflicts of laws thereof." (Doc. #102-1, p. 32). In light of this choice of law provision, which neither party challenges, the Court will apply New York law in its analysis of Plaintiffs' claims for purposes of this motion. *See Medtronic, Inc. v. Gibbons*, 684 F.2d 565, 567–68 (8th Cir. 1982) (holding that the choice of law rules "of the forum state control which substantive law should apply" and applying forum state's law to determine the validity and enforceability of a contractual choice of law provision); *State ex rel. McKeage v. Cordonnier*, 357 S.W.3d 597, 600 (Mo. banc 2012) (holding that "[g]enerally, parties may choose the state whose law will govern the interpretation of their contractual rights and duties" and that "[a] valid choice of law provision in a contract binds the parties").

## II. Legal Standards

### A. Fed. R. Civ. P. 12(b)(2) Dismissal for Lack of Personal Jurisdiction

When a defendant seeks dismissal for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citing *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d at 591–92 (8th Cir. 2011)). Personal jurisdiction is "either specific or general." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979–80 (8th Cir. 2015). Specific jurisdiction over a defendant exists when that defendant has sufficient minimum contacts with the forum state and the plaintiff's claim arises from those contacts. *Creative Calling Sols.*, 799 F.3d at 979–80 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). General jurisdiction over a defendant exists when that defendant's contacts with the forum state "are so continuous and systematic as to render [the defendant] essentially at home" in that state, regardless of how the plaintiff's claim arose. *Daimler*, 571 U.S. at 127, 136–39 (holding that a corporation's principal place of business is a "paradigm" basis for general personal jurisdiction).

The forum court must have both statutory and constitutional authority to exercise specific personal jurisdiction over an out-of-state defendant. *Creative Calling Sols.*, 799 F.3d at 979 (citing *K–V Pharm. Co.*, 648 F.3d at 592) (holding that personal jurisdiction is proper "if the forum State's long-arm statute permits the exercise of personal jurisdiction and that exercise is consistent with the Due Process Clause."). For statutory authority to exercise personal jurisdiction, a federal court looks to the law of the state where the court sits. Fed. R. Civ. P. 4(k)(1)(A); *see also Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler*, 571 U.S. at 125) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction

over persons."). Missouri's long-arm statute subjects "[a]ny . . . corporation" to the personal jurisdiction of Missouri courts for "any cause of action arising from" that corporation's "transaction of any business within" Missouri. Mo. Rev. Stat. § 506.500.1. As to constitutional authority for exercising personal jurisdiction, the Due Process Clause "requires that the defendant purposely establish 'minimum contacts' in the forum state such that asserting personal jurisdiction and maintaining a lawsuit against the defendant does not offend 'traditional notions of fair play and substantial justice.'" *K-V Pharm. Co.*, 648 F.3d at 592 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985)).

### B. Fed. R. Civ. P. 12(b)(6) Dismissal for Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal citations omitted); *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).

The Court must accept all facts alleged in the complaint as true when deciding a motion to dismiss. *See Data Mfg., Inc. v. United Parcel Service, Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable"). However, allegations that are "legal conclusions or formulaic recitation of the elements of a

4

cause of action . . . may properly be set aside." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 677) (internal citations omitted).

### III. Discussion

#### A. Count One (Breach of Contract)

Count One of Plaintiffs' Amended Complaint revolves around two particular sections of the Warrant Agreement. The first, § 6.03, states the following:

> *Modification, Waiver and Meetings.* (a) This Warrant Agreement may be modified or amended by the Company and the Warrant Agent, without the consent of the holder of any Warrant, for the purposes of curing any ambiguity or correcting or supplementing any defective provision contained in this Warrant Agreement; *provided* that such modification or amendment does not adversely affect the interests of the Warrantholders in any respect.
>
> (b) Modifications and amendments to this Warrant Agreement or to the terms and conditions of Warrants may also be made by the Company and the Warrant Agent, and noncompliance with any provision of the Warrant Agreement or Warrants may be waived, with the written consent of the Warrantholders of Warrants representing a majority of the aggregate Number of Warrants at the time outstanding.
>
> (c) However, no such modification, amendment or waiver may, without the written consent or the affirmative vote of each Warrantholder affected:
>   (i) change the Expiration Date;
>   (ii) increase the Exercise Price or decrease the Number of Warrants (except as explicitly set forth in Article 5);
>   (iii) impair the right to institute suit for the enforcement of any payment or delivery with respect to the exercise and settlement of any Warrant;
>   (iv) impair or adversely affect the exercise rights of Warrantholders, including any change to the calculation or payment of the Full Physical Share Amount or the Net Share Amount, as applicable;
>   (v) deprive any Warrantholder of any economic rights, privileges or benefits that arise under or are provided pursuant to this Warrant Agreement and/or the Warrants . . .

(Doc. #102-1, pp. 28–29) (emphasis in original). The second, § 3.02, states the following:

> *Procedure for Exercise.* (a) To exercise a Warrant (i) in the case of a certificated warrant, the Warrantholder must surrender the Warrant Certificate evidencing such Warrant at the principal office of the Warrant

> Agent (or successor warrant agent), with the Exercise Notice set forth on the reverse of the Warrant Certificate duly completed and executed . . . or (ii) in the case of a Global Warrant, the Warranthoder must comply with the procedures established by the Depositary for the exercise of warrants.
>
> (b) The date on which a Warrantholder complies with the requirements for exercise set forth in this Section 3.02 in respect of a Warrant is the "**Exercise Date**" for such Warrant. However, if such date is not a trading Day or the Warrantholder satisfies such requirements after the Close of Business on a Trading Day, then the Exercise Date shall be the immediately succeeding Trading Day, unless that Trading Day falls after the Expiration Date, in which case the Exercise Date shall be the immediately preceding Trading Day.

(Doc. #102-1, p. 15) (emphasis in original).

In Count One, Plaintiffs allege that Defendant "breached section 6.03(c) of the Warrant Agreement when it modified the Expiration Date for Series A Warrants without the consent of Plaintiffs and the Class" and "when it failed to adhere to section 3.02(b), which expresses the method for calculating the Exercise date when the Trading Day calculation occurs after the Expiration date." (Doc. #102, ¶¶ 185–86). Defendant argues that Count One should be dismissed because "Plaintiffs have failed to allege their own adequate performance under the contract and have failed to plead damages attributable to [Defendant]," both of which are elements of a breach of contract claim under New York law. (Doc. #106, p. 16). Plaintiffs argue that Defendant's motion should be denied[2] because "Plaintiffs were excused from attempting to perform under the Warrant Agreement by GM's earlier breach" and "GM caused damage to the Warrantholders when it accelerated the Expiration Date." (Doc. #107, p. 9).

---

[2] Plaintiffs also argue that Defendant's motion should be denied under the law of the case doctrine. (Doc. #107, p. 7). In its discretion, this Court declines to apply that doctrine and will instead decide the present motion under the relevant Federal Rules of Civil Procedure and New York substantive law. *See In re Tri-State Financial, LLC*, 885 F.3d 528 (8th Cir. 2018) (internal quotations and citation omitted) ("Law of the case is a doctrine of discretion.").

Count One states a plausible breach of contract claim. "Under New York law, the elements of a breach of contract claim are (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.,* 375 F.3d 168, 177 (2d Cir.2004)). Regarding the second element, New York law holds that "when a party has breached a contract, that breach may excuse the nonbreaching party from further performance if the breach is 'material.'" *Bernard Nat. Loan Inv'rs, Ltd. v. Traditions Mgmt., LLC*, 688 F. Supp. 2d 347, 361 (S.D.N.Y. 2010) (citing *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers,* 442 F.3d 101, 117 (2d Cir.2006)). "For a breach of contract to be material, it must go to the root or essence of the agreement between the parties, or be one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract." *Id.* This materiality issue "is usually a question of fact and should be decided at the summary judgment stage 'only where the inferences are certain.'" *Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.*, No. 06CIV2875LAKHBP, 2010 WL 11586687, at *4 (S.D.N.Y. Feb. 24, 2010) (quoting *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186–87 (2d Cir. 2007)).

Count One plausibly alleges a claim for breach of contract. As to performance in particular, the Amended Complaint alleges that on June 7, 2016, Defendant decided to accelerate the expiration date of the warrants, which the Warrant Agreement had previously established as July 10, 2016, and that this June 7 decision breached the Warrant Agreement. (Doc. #102, ¶¶ 46—49, 69). These allegations, accepted as true, show that Defendant breached the Warrant Agreement before that agreement obligated Plaintiffs to exercise their warrants. It is too early to decide whether, as a matter of law,

such a breach was sufficiently material to excuse Plaintiffs from performing their obligations under the Warrant Agreement. Plaintiffs' factual allegations, however, are sufficient to satisfy Rule 8. Moreover, as it was in the previous motion to dismiss, the parties offer varying interpretations of the contract and the facts underlying the claim of breach. Sufficient factual disputes exist to warrant denial of the motion to dismiss. *See McCarthy v. New York Kitchen & Bathroom Corp.*, 151 A.D.3d 616, 58 N.Y.S.3d 324, 325 (N.Y. App. Div. 2017) (finding it to be reversible error to not send the issue of breach of contract to the jury); *In re: Residential Capital, LLC*, 533 B.R. 379, 404 (Bankr. S.D.N.Y. 2015) (holding that the materiality of breach is a fact issue for the jury). For example, there are disputes about whether the warrants were global or certificated and about whether Defendant acted reasonably to prevent the warrants from being delisted from the NYSE. Accordingly, Defendant's motion to dismiss Count One is denied.

### B. Count Two (Breach of Contract)

Count Two of Plaintiffs' Amended Complaint focuses on § 5.04 of the Warrant Agreement, which states

> *No Impairment*. The Company will not, by amendment of its Certificate of Incorporation or through any reorganization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities or any other voluntary action, avoid or seek to avoid the observance or performance of any of the terms to be observed or performed hereunder by the Company, but will at all times in good faith assist in the carrying out of all the provisions of this Warrant and in taking of all such action as may be necessary or appropriate in order to protect the rights of the Warrantholder.

(Doc. #102-1, p. 22). In Count Two, Plaintiffs allege that Defendant breached § 5.04 of the Warrant agreement in the following ways: (1) "when it failed to provide adequate notice to broker-dealers and Warrantholders concerning (a) the acceleration of the Expiration Date to July

8

8, and/or [(b)] the suspension of trading of the Warrants on the NYSE"; (2) "when it failed to enact a guarantee protect period to ensure the liquidity of the Warrants through the Expiration Date, and failed to notify broker-dealers and Warrantholder that it had not secured a guarantee protect period"; (3) "when it failed to extend the Expiration Date"; and (4) "when it failed to reactivate the Warrants after they expired." (Doc. #102, ¶¶ 194–97).

Defendant argues that Plaintiffs' Count Two should be dismissed because Plaintiffs improperly read nonexistent rights and obligations into the Warrant Agreement, (Doc. #106, p. 26), and because Count Two fails to allege "damages that are 'reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes.'" (Doc. #106, p. 29) (citing *Wenger v. Alidad*, 696 N.Y.S.2d 227, 228 (N.Y. App. Div. 1999)). Defendant further argues that Plaintiffs cite no authority for the proposition that "a 'no impairment' clause like § 5.04 may be interpreted to create affirmative obligations that Plaintiffs have made up and want to insert into the contract." (Doc. #108, p. 10). Plaintiffs argue that section 5.04 "imposes a broader obligation on GM to take in good faith 'all such action' to protect the rights of Warrantholders—not just those obligations listed within the Warrant Agreement." (Doc. #102, p. 17). According to Plaintiffs, "[i]f the Court accepts GM's narrow interpretation, then § 5.04 of the Warrant [A]greement would have no meaning." (Doc. #102, p. 17).

Count Two states a plausible claim for breach of contract. As stated above, Count Two contains several allegations of what Defendant could have done—but allegedly failed to do—to satisfy its alleged obligations under § 5.04. This Court agrees with Plaintiffs' argument that "§ 5.04 would have no meaning" if this Court adopted Defendant's interpretation. *See India.Com, Inc. v. Dalal*, 412 F.3d 315, 323 (2d Cir. 2005) (quoting *Reda v. Eastman Kodak Co.*, 649 N.Y.S.2d 555, 557 (N.Y. App. Div. 1996) ("[U]nder New York law, "[e]ffect and meaning

9

must be given to every term of the contract, and reasonable effort must be made to harmonize all of its terms."). Moreover, as with Count One, the parties offer varying interpretations of the Warrant Agreement. It would be premature to conclusively resolve these disputes at this stage in the litigation.

### C. Count Three (Unjust Enrichment)

Defendant argues that Plaintiffs' Count Three should be dismissed because Plaintiffs have not sufficiently pleaded that Defendant benefitted from Plaintiffs' failure to exercise their Warrants or that "equity and good conscience require restitution," both of which are elements of an unjust enrichment claim under New York law. (Doc. #106, p. 19). Defendant also argues that under New York law "a claim for unjust enrichment is normally proper only in the absence of an express agreement between the parties." (Doc. #106, p. 20). According to Defendant, "courts have routinely granted motions to dismiss unjust enrichment claims where, as here, the existence and validity of the contract was not disputed." (Doc. #106, p. 21). Plaintiffs argue that Count Three sufficiently alleges the elements of a claim for unjust enrichment under New York law, which Plaintiffs argue "allows unjust enrichment claims to be pled alternatively to breach of contract claims." (Doc. #107, pp. 15–16).

To state a claim for unjust enrichment under New York law, a plaintiff must plead that "(1) defendant was enriched, (2) at [the] plaintiff[']s expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 453 (S.D.N.Y. 2014). New York courts have held that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Digizip.com, Inc. v. Verizon Servs. Corp.*, 139 F. Supp. 3d 670, 682

(S.D.N.Y. 2015) (internal quotations omitted) (quoting *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987)). New York law also provides that "even though [p]laintiffs may not ultimately *recover* under both the breach of contract and unjust enrichment claims, courts in this Circuit routinely allow plaintiffs to *plead* such claims in the alternative." *Id.* at 452 (emphasis in original) (citing *Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770(SAS), 2003 WL 1858153, at *7 (S.D.N.Y. Apr. 10, 2003)) (noting that plaintiff is allowed to plead both contract and quasi-contract claims even though he may only recover on one such ground)); *see also, Dragushansky v. Nasser*, No. 12 CV 9240 TPG, 2013 WL 4647188, at *8 (S.D.N.Y. Aug. 29, 2013) ("Although a plaintiff cannot ultimately recover under a claim for breach of contract and unjust enrichment where a contract governs the subject matter at issue, a plaintiff can plead both causes of action in the alternative."). Moreover, Rule 8(d)(2) expressly allows parties to "set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones" and states that "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."

Although Defendant argues in its motion that that "the existence and validity of" the Warrant Agreement is "not disputed," Defendant has neither admitted nor denied Plaintiffs' allegation that the Warrant Agreement "constitutes a binding, enforceable contract." (Doc. # 102, ¶¶ 181, 190). This makes sense because Defendant's motion is its first Rule 12 response to Plaintiffs' Amended Complaint and the record does not indicate that Plaintiffs have requested that Defendant admit the validity of the Warrant Agreement. As a result, this Court cannot say at this stage that the Warrant Agreement is "an *indisputably* valid agreement," (Doc. #108, p. 6), that would render Count Three impermissibly duplicative of Counts One and Two and strip Defendant of any challenge to the Warrant Agreement's validity. Whether the parties'

genuinely dispute the Warrant Agreement's validity is a question for a later time. Thus, Plaintiffs may plead Count Three in the alternative to their breach of contract claims.

Plaintiffs have sufficiently pleaded a plausible claim for unjust enrichment under New York law. In Count Three, Plaintiffs allege that "[a]s a result of GM's wrongful conduct, Warrantholders were unable to redeem their Series A Warrants for GM's common stock"; that "because of its wrongful conduct, GM obtained monies in that it retained the common shares of its stock that could have been redeemed by Warrantholders"; that "GM appreciated, accepted and retained the non-gratuitous benefits (i.e., profits and retention of its common stock) conferred by Plaintiffs and the Class"; that "[i]t would be inequitable and unjust for GM to retain these wrongfully obtained profits" and that such retention "would violate the fundamental principles of justice, equity and good conscience"; and that therefore "Plaintiffs and the Class are entitled to restitution of the profits unjustly obtained, plus interest." (Doc. #102, ¶¶ 202–207). Accepted as true, these allegations state a plausible unjust enrichment claim.

### D. Personal Jurisdiction over Non-Resident Putative Class Members

Defendant moves to dismiss the claims of Non-Resident Putative Class Members for lack of personal jurisdiction over Defendant. As with the previous motion to dismiss, the facts are not at issue here. Defendant does not challenge or dispute that this Court has specific personal jurisdiction over Defendant with respect to the claims of the two named Plaintiffs, both of whom are Missouri residents.[3] There is no current dispute that if Non-Resident Putative Class Members brought individual suits or were considered in the personal jurisdictional analysis, this Court would not have specific personal jurisdiction over their claims. The issue here is whether

---

[3] There is also no dispute that this Court does not have general personal jurisdiction over Defendant. Defendant is a Delaware corporation with its principal executive office in Michigan, and Plaintiffs do not attempt to show that Defendant's contacts with Missouri "are so continuous and systematic as to render [Defendant] essentially at home" in Missouri. *See Daimler*, 571 U.S. at 127, 136–39.

the Non-Resident Putative Class Members should be considered in the personal jurisdictional analysis.

Defendant relies on *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017), to support its position that this Court lacks personal jurisdiction over Defendant with respect to the claims of Non-Resident Putative Class Members. In *Bristol-Myers*, out-of-state plaintiffs, along with California plaintiffs, alleged a host of state-law claims in mass tort. *Id.* at 1777. The *Bristol-Myers* Court held that it lacked specific personal jurisdiction over the out-of-state defendant drug manufacturer because there was no "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Id.* at 1781 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Court reasoned that "the mere fact that *other* plaintiffs were [harmed by the defendant] in California does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1776 (emphasis in original).

Defendant argues that because the Non-Resident Putative Class Members reside outside of Missouri, Defendant lacks the connection to Missouri required under the Due Process Clause that would otherwise give rise to this Court's personal jurisdiction over Defendant on the Non-Residents' claims. (Doc. #106, p. 30). Defendant asserts that "a number of federal courts have held that Bristol-Meyers applies" in general to suits brought in federal court and that several district courts have applied *Bristol-Meyers* to federal class actions in particular. (Doc. #106, p. 31). Defendant acknowledges that "there is a split among the federal courts on this issue" but argues that "the better reasoned decisions have held that due process requires dismissal of claims of such non-residents." (Doc. #108, p. 11). Plaintiffs argue that Defendant's motion should be denied because "the state of *Bristol-Myers* authority has not materially changed to warrant a

13

different conclusion on this issue." (Doc. #107, p. 21). Plaintiffs further argue that, "to the extent any federal district courts have applied *Bristol-Myers* to class actions, those courts represent the clear minority." (Doc. #107, p. 22).

This Court again declines to apply *Bristol-Meyers* in a federal class action. As stated in this Court's prior order, it is unclear whether *Bristol-Myers* even applies to federal courts or "whether its opinion . . . would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Id.* at n.4. While Defendant cites district court cases applying *Bristol-Meyers* to unnamed members of a putative class action in federal court, these cases are—as Plaintiffs argue—the minority. *See Knotts v. Nissan North Am., Inc.*, No. 17-CV05049 (SRN/SER), 2018 WL 4922360, at *14 (D. Minn. Oct. 10, 2018) (footnotes omitted) (noting that "[d]istrict courts in Califonria, Louisiana, Florida, Georgia, Virginia, Texas, the District of Columbia, and even Illinois have concluded that there are valid reasons for limiting [*Bristol-Meyers*] to named parties—particularly due to the material distinctions between mass tort actions and class actions"). The Court at this time, in accordance with other jurisdictions, declines to extend *Bristol-Myers* to federal class actions. Accordingly, Defendant's motion to dismiss for lack of personal jurisdiction is denied.

### E.  Conclusion

For the foregoing reasons, Defendant General Motors Company's Motion to Dismiss Plaintiffs' Amended Complaint, (Doc. #105), is denied.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: December 20, 2018